IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Chae Yi You and Chur K. Back | : |
| Plaintiffs | : |
| v. | : CASE NO.: 1:12-CV-0202-JEC-AJB |
| J.P. Morgan Chase Bank N.A. & Federal National Mortgage Association | : JURY TRIAL DEMANDED |
| Defendants | : |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

COMES NOW the Plaintiffs, Chae Yi You and Chur K. Beck, and file this Brief in Opposition to the Defendants' Motion to Dismiss the Complaint, showing the Court as follows:

**I. Introduction**

The real property that is the subject of this Complaint is commonly known as 2840 Cresent Walk Lane, Suwanee, GA 30024. (hereinafter the "subject property"). Plaintiffs Chae Yi You and Chur Back (hereinafter "Plaintiffs") were, until the actions complained of in the complaint which involve a non-judicial foreclosure, the owners of the subject property. Defendant JP Morgan Chase

Bank, NA was the entity that wrongfully foreclosed of the subject property through a non-judicial foreclosure sale of the Plaintiffs' home on or around August 2, 2011.  The non-judicial foreclosure was conducted pursuant to a Notice of Foreclosure Advertisement wherein JP Morgan Chase Bank NA claimed to have been authorized to exercise the power of sale of the Plaintiff's property and that it was going to sell the Plaintiff' property at auction.  It claimed that it was successor by merger to Chase Home Finance, LLC which it claimed was a successor by merger to Chase Manhattan Mortgage Corp, who Defendant JP Morgan Chase asserted has been assigned the security deed on the Plaintiffs' property from the original lender and grantee of the security deed, Excel Home Loan, Inc..  However, as discussed below, JP Morgan Chase had no interest in the loan at issue or the property at issue because (1) it was not the owner or holder of the Plaintiff's promissory note and (2) there has never been a valid assignment of the security deed from Excel Home Loan, Inc to any other entity, and, even if there was, there has never been an assignment of the security deed to JP Morgan Chase Bank, NA.  It is believed that at the time of foreclosure Federal National Mortgage Association held/owned the Plaintiff' loan/note.

      As for the security deed, JP Morgan Chase points to a purported assignment of the security deed from Excel Home Loans to Chase Manhattan Mortgage which it claims to be a third generation removed successor by merger as the basis

upon which it claims to have been granted power of sale. However, there are two reasons why JP Morgan Chase Bank, NA's reliance upon the purported assignment from Excel to Chase Manhattan and its claimed successor by merger status as authorizing it to exercise the power of sale as to the Plaintiffs' property is misplaced.  Those reasons are: (1) the purported assignment upon which Defendant relies is defective and actually conveyed nothing from Excel to Chase Manhattan because it is defective in that it failed to identify the security deed that was to be assigned from Excel to Chase Manhattan, and (2) there never was any assignment from either Excel or Chase Manhattan or Chase Home Finance to JP Morgan Chase Bank, NA and JP Morgan Chase Bank, NA was not a successor by merger to either Chase Home Finance or Chase Manhattan.

    Defendant Federal National Mortgage Association  (herein after "FNMA") was aware of JP Morgan Chase Banks' actions in wrongfully foreclosing on the subject property and it knowingly accepted and recorded what it knew to be an invalid and void special warranty deed from JP Morgan Chase Bank, NA purporting to convey the subject property to FNMA.  FNMA then wrongfully evicted the Plaintiffs from their property following what it knew was an improper, invalid, and wrongful foreclosure that was conducted in August of 2011.

    In addition to the above, the notice of the initiation of proceedings to exercise the power of sale was not sent to the Plaintiffs by the secured creditor, as

demanded by O.C.G.A. § 44-14-162.2(a).  In June of  2011 a series of letters were sent to the Plaintiffs wherein they were informed that their property was to be sold at a foreclosure auction on the first Tuesday of August 2011.  The letters, which specifically purported to be the notice of foreclosure letter mandated by O.C.G.A. 44-14-162.2, identified JP Morgan Chase Bank, NA as the secured creditor. JP Morgan Chase Bank NA, however, was not the secured creditor with respect to the loan or property at issue as of June, July or August of 2011.

First, JP Morgan Chase Bank NA was not the owner of the promissory note at the time of foreclosure. The promissory note was executed in favor of Excel Home Loans.  At some presently unknown date subsequent to the Plaintiffs' execution of the note, it was sold and/or transferred to a still unidentified entity (investor) who actually owns the note and/or debt.  The Plantiffs believe that Defendant Federal National Mortgage Association was the owner/holder of the promissory note/debt at the time of the foreclosure sale of the Plaintiffs' property. The Plaintiffs belief is based on the fact that by letter dated October 1, 2010 from a law firm that appeared to be representing Federal National Mortgage Association, the Plaintiffs, who had filed for bankruptcy, were notified that they might be eligible to a workout of the loan with Fannie Mae (i.e. Federal National Mortgage Association), i.e. an indication that Fannie Mae owned the loan.

Thus, because JP Morgan Chase Bank N.A.'s representation that it was the secured creditor is false and because there was no notice of foreclosure that was sent to the Plaintiffs by the secured creditor, there was no notice sent that complied with the requirements of OCGA 44-14-162.2.  As such, pursuant to OCGA 44-14-162, since no notice of foreclosure was sent incompliance with OCGA 44-14-162.2, the non-judicial foreclosure sale of the Plaintiffs' property conducted by JP Morgan Chase Bank, NA is invalid as a matter of law.

## II.     Defendants' Motion to Dismiss

The first argument advanced by Defendants for dismissal is lack of service of process on Defendants.  The Court should not dismiss the complaint for lack of service however, as the complaint was removed from the Superior Court of Gwinnett County, Georgia to this Court on January 20, 2012.  Plaintiffs are in the process of effectuating service of process on the Defendants and dismissal is not warranted at this juncture.

As to the merits of the Plaintiffs' wrongful foreclosure and wrongful eviction claims the Defendants advance several arguments for dismissal which are all misplaced as a matter of fact and law.  As to the wrongful foreclosure claim that is based upon the defective, in that it failed to identify the security deed that was to be assigned, assignment from Excel to Chase Manhattan and the wrongful foreclosure claim that is premised upon the facts that there never was any

assignment from either Excel or Chase Manhattan or Chase Home Finance to JP Morgan Chase Bank, NA and JP Morgan Chase Bank, NA was not a successor by merger to either Chase Home Finance or Chase Manhattan. the Defendants argue that the publically available property records and merger documents show a chain of title whereby Chase acquired the power of sale. As shown below, however, these Defendants' arguments are simply wrong.

As to the wrongful foreclosure claim that is based upon the failure of the secured creditor to send the notice of foreclosure required by OCGA 44-14-162.2, the Defendants argue that the notices sent by Chase satisfied the requirements of OCGA 44-14-162.2. According to the Defendants Chase was the secured creditor since it received a valid assignment of the security deed. However, as discussed below, the secured creditor is the entity to whom the debt is owed, ie the owner of the promissory note. The Complaint clearly alleges that Chase was not the owner of the promissory note. For this reason alone, the motion to dismiss must be denied.

As to the wrongful eviction claim the defendants argue that since it is based upon the allegation that the foreclosure was wrongful and since they claim to have shown that the foreclosure was proper and valid, then the wrongful eviction claim necessarily must be dismissed. However, as discussed above, the complaint sets

forth valid claims of wrongful foreclosure such that dismissal of the wrongful eviction claim likewise would not be proper.

### III.   Argument and Citation of Authority

#### A.   Legal Standard Applicable to 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6)…challenges the legal sufficiency rather than the truth of factual allegations, which are assumed true and construed most favorably to the plaintiff. Hoffman-Pugh v. Ramey, 312 F.3d 1222, 1225 (11th Cir. 2002). The Trial Court"s consideration of a motion to dismiss is restricted to the allegations in the Complaint, and may not properly rest on facts or assumed facts not fairly raised in the Complaint. Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003). See also, Ramos v. Goodfellas Brooklyn"s Finest Pizzeria, LLC, 2008 U.S.Dist. LEXIS 87368 (S.D. Fla. 10/15/2008)(at the motion to dismiss stage, under Fed.R.Civ.P. 12(b)(6), a court can only examine the four corners of a complaint).

"The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is… "exceedingly low." Fin.Sec.Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007), quoting, Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Id. In deciding a motion to dismiss, the court must accept as true all the factual allegations in the complaint, drawing all inferences derived from those facts in the light more favorable to the plaintiff. Brown v. Crawford County, 960 F.2d. 1002, 1010 (11th Cir. 1992). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed. 2d 90 (1974); Little v. N. Miami, 805 F.2d 962, 965 (11th Cir. 1986)(same).

Under Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965, 167 L.Ed. 2d 929 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and „that recovery is very remote and unlikely." Twombly, 127 S.Ct. at 1965.[1]

    **B.**    **The Foreclosure Is Invalid Because the Secured Creditor Did Not Send A Notice of Foreclosure to the Plaintiffs As Required by O.C.G.A. 44-14-162.2**

---

[1] See also, Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed. 2d 338 (1989)("Rule 12(b)(6) does not countenance…dismissals based on a judge"s disbelief of a complaint"s factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed. 2d 90 (1974) (a well pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

In June of 2011 a series of letters were sent to the Plaintiffs which purported to be the notice of foreclosure letter mandated by O.C.G.A. 44-14-162.2. The letters were sent by foreclosure counsel on behalf of JP Morgan Chase Bank N.A. The letters identified JP Morgan Chase Bank, NA as the secured creditor. However, JP Morgan Chase Bank NA was not the secured creditor with respect to the loan or property at issue as of June, July or August of 2011 because it was not the owner of the promissory note at issue.

The foreclosure on the Plaintiffs' property at issue herein is invalid under O.C.G.A. 44-14-162 which declares no sale of real estate under powers contained in mortgages, deeds, or other lien contracts shall be valid…*unless notice of the sale shall have been given as required by Code Section 44-14-162.2* (emphasis added). Section 162.2 requires that the notice be sent by the secured creditor. It also requires that the debtor be provided the identity of the entity that has full authority to modify the terms of the loan. Here the letters referenced above were sent on behalf of JP Morgan Chase Bank NA which was at best the servicer on the Plaintiffs' loan debt and they fail to even identify the secured creditor by name.

In the very recent decision announced in Stubbs v. Bank of America, No. 1:11-CV-1367, 2012 WL 516972 at *2-5 (N.D. Ga. Feb. 16, 2012.) the exact issue that this Court must resolve in deciding the Motion to Dismiss under

consideration in the case at bar was addressed by USDC Northern District Judge Totenberg and, after a painstaking analysis that is unarguably and absolutely persuasive, the issue resolved in a manner favorable to Plaintiffs herein.  The Court in <u>Stubbs</u> held as follows as to the requirements of O.C.G.A. 44-14-162.2:

Georgia law allows for a number of different means of foreclosing on a debt secured by real property, including nonjudicial foreclosure by power of sale. See Frank S. Alexander, Georgia Real Estate Finance and Foreclosure Law, § 1:5 (2011-12 ed.). In authorizing this manner of foreclosure, the state provides creditors with the flexibility and efficiency of a nonjudicial procedure upon a debtor's default. However, given the significant power that such a procedure vests in the foreclosing party, the law requires that powers of sale "shall be strictly construed and shall be fairly exercised." O.C.G.A. § 23-2-114. 1 Moreover, for loans secured by residential property, O.C.G.A. § 44-14-162.2 specifies the required elements of the notice letter that a creditor must send prior to the nonjudicial foreclosure sale. This  [7] statutory section requires that the creditor advise the homeowner of the "individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." O.C.G.A. § 44-14-162.2. The creditor must send the statutory notice by "registered or certified mail or statutory overnight delivery, return receipt requested." Id. The statute expressly requires a higher level of notice for residential loans than nonresidential loans.

Georgia's nonjudicial foreclosure statute authorizes the secured creditor to foreclose in conformity with O.C.G.A. §§ 44-14-162 et seq. 2 "Secured creditor" is not defined in the statute and is therefore to be given its ordinary meaning. See O'Neal v. State, 288 Ga. 219, 220-21, 702 S.E.2d 288 (Ga. 2010) ("we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some  [8] language mere surplusage"). Merriam-Webster's Dictionary defines creditor as "one to whom a debt is owed; a person to whom money or goods are due." Black's Law Dictionary (9th ed.) defines creditor as "one to whom a debt is owed; one who gives credit for money or goods," and secured creditor as "a creditor who has the right, on the debtor's default, to proceed against collateral and apply it to the payment of the debt." Thus, according to the plain language of the statute, the secured creditor - the entity to whom the debt is owed - is authorized to foreclose pursuant to Georgia's nonjudicial foreclosure statute.

The sequence of legislative enactments, specifically the recent amendment of the statute in 2008, bolsters this understanding of the language of O.C.G.A. § 44-14-162 et seq. At that time, the Georgia General Assembly added the following clause to section 162: "The security

instrument or assignment [9] thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court in the county in which the real property is located." O.C.G.A. § 44-14-162(b). This addition to the statute clearly demonstrates the legislature's intent to require the identity of the secured creditor to be of public record prior to the foreclosure sale. At the same time, the legislature amended section 162.2(a) to require the secured creditor to send the pre-foreclosure notice 30 days prior to sale (rather than 15) and to require that this notice "shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." O.C.G.A. § 162.2(a).

The legislature enacted the 2008 amendments of the foreclosure statute with the goal of making transparent both the identity of the secured creditor with authority to foreclose and the identity (and contact information) of the party with authority to agree to a loan modification. Often, the secured creditor and the entity with full authority to modify the loan will be one [10] and the same. At times a servicing agent may have full authority to modify the loan, but the fact that it is merely a servicer acting on behalf of a loan holder, and the identity of that holder, is relevant to that factual question. In any event, these two sections were amended simultaneously with a clear purpose - to increase transparency and clarity in what can otherwise be a quite bewildering process, both in order to avert any avoidable foreclosures through loan modifications and to protect the integrity of Georgia's real property records. This is evidenced by the title of the 2008 bill amending the statute, which describes its purpose as follows:

AN ACT to amend Article 7 of Chapter 14 of Title 44 of the Official Code of Georgia Annotated, relating to foreclosure on mortgages, conveyances to secure debt, and liens, so as to require a foreclosure to be conducted by the current owner or holder of the mortgage, as reflected by public records; to provide for the identity of the secured creditor to be included in the advertisement and in court records; to change the requirement for mailing or delivery of notice to debtor for sales made under the power of sale in a mortgage, security [11] deed, or other lien contract; to provide for the content of such notice; to provide for related matters; to provide an effective date; to repeal conflicting laws; and for other purposes.

2008 Georgia Laws Act 576 (S.B. 531).

The goal of the amendment is bolstered by other related sections of the Georgia Code. Section 162.3 states that the borrower cannot waive the statutory notice at the time the security interest is created. See O.C.G.A. § 44-14-162.3(c) ("[n]o waiver or release of the notice requirement of Code Section 44-14-162.2 shall be valid when made in or contemporaneously with the security instrument containing the power of nonjudicial foreclosure sale"). The fact that the notice requirement is nonwaivable demonstrates the consumer protection purpose of these interrelated sections. Moreover, section 162.4 provides:

All deeds under power shall contain recitals setting forth the giving of notice in compliance with Code Section 44-14-162.2 or a statement of the facts which render the same inapplicable thereto, which facts may include, without limitation, the nonresidential character of the property. The effect of such recitals shall be to protect the validity of the title of any [12] subsequent purchaser in good faith other than the lender.

O.C.G.A. § 44-14-162.4. Requiring the recitals of actions taken in compliance with the statute to be incorporated into the foreclosure deed (the "deed under power" of sale) emphasizes the legislative purpose of protecting the integrity of Georgia's real property title records. All of these interrelated code sections show that the statute requires clear disclosure of the secured creditor and the entity with authority to modify the loan and does not permit obfuscation and subterfuge on these material points.

Under the facts alleged here, if presumed true, the actual "secured creditor" did not provide notice of the foreclosure sale as required by O.C.G.A. § 44-14-162.2. Nor did the servicer, acting as agent for the secured creditor, send a foreclosure notice that properly identified the secured creditor. Rather, the loan servicer sent a notice of foreclosure identifying itself as the secured creditor when it was not. (Am. Compl. Exs. B, D, E.)

Other judges of this district have grappled with the issue of whether a servicer can send the notice required under O.C.G.A. § 44-14-162.2. See, e.g., LaCosta v. McCalla Raymer, No. 1:10-CV-1171-RWS, 2011 U.S. Dist. LEXIS 5168, 2011 WL 166902 (N.D. Ga. Jan. 18, 2011) [13] . In LaCosta, Judge Story explained that under agency law, "a principal has the power to appoint someone to act on his behalf," and therefore a secured creditor should be able to direct its servicer to send the statutory notice. 2011 U.S. Dist. LEXIS 5168, [WL] at *4. Judge Story further explained, "The goal of Section 162 is to give the debtor notice of the foreclosure sale. Whether that notice is provided by the secured creditor directly, or by its agent, is of no consequence." Id.

While it may be of no consequence who actually sends the notice, and that task may properly be delegated to a servicing agent (or, as is often the case, an attorney), the amendments of sections 162 and 162.2 in 2008 make clear that the identity of the secured creditor conducting the sale is a material element of that notice. The identity of the secured creditor is material because of its bearing on the entity with authority to modify the loan. Misidentifying the secured creditor creates confusion and doubt regarding the identification of the entity with authority to modify. Moreover, disclosing that Bank of America has full authority to modify and is the creditor for the [14] loan is materially different from disclosing that Bank of America has full authority to modify on behalf of a creditor, Fannie Mae, within whatever guidelines that creditor may have imposed. See Adam Ashcraft and Til Schuermann, Understanding the Securitization of Subprime Mortgage Credit, 318 Federal Reserve Bank of New York Staff Report at 9 (2008) (investors "can put hard rules into the pooling and servicing

agreement limiting loan modifications"); Loan Workout Hierarchy for Fannie Mae Conventional Loans (2012), available at www.efanniemae.com/sf/servicing/pdf/ loanworkoutfactsheet.pdf; Pasillas v. HSBC Bank, 255 P.3d 1281, 1283 (Nev. 2011) (servicer violated Nevada mediation program rules by failing to bring to the mediation a person with authority to modify the loan, as it "needed additional authority from investors to agree to a loan modification").

This reasoning is not inconsistent with the Eleventh Circuit's recent approval of a grant of summary judgment for the defendants in a wrongful foreclosure suit where the servicer sent the foreclosure notice, but the notice identified the true secured creditor. See Smith v. Saxon Mortgage, No. 11-11762, 2011 U.S. App. LEXIS 22646, 2011 WL 5375063 (11th Cir. 2011),  [15] summarily aff'g No. 1:09-CV-3375, 2011 U.S. Dist. LEXIS 153327 *8 (N.D. Ga. March 16, 2011) (granting summary judgment for defendants where foreclosure notice was sent by the servicer but "clearly identified the creditor and the loan servicer and was in no way misleading"). Sending a foreclosure notice that misidentifies the secured creditor violates the spirit and intent of O.C.G.A. § 44-14-162.2.

Defendants concede in their reply brief that Fannie Mae was the secured creditor, and simply argue that Bank of America could send the foreclosure notice as Fannie Mae's agent. (Reply at 4-5.) While troubling for the reasons set forth above, this concession bolsters Plaintiff's other basis for his wrongful foreclosure claim - that the assignment of the security deed to the secured creditor, Fannie Mae, was not filed prior to the time of sale. Defendants argued in their original brief that there was no need to record an assignment to Fannie Mae because the assignment to Bank of America was sufficient to comply with section 162(b). That argument assumes a definition of "secured creditor" that is equivalent to "beneficiary or assignee of the security deed." However, such a definition would render the 2008 amendment  [16] of section 162 meaningless, for whatever entity is the grantee of record of the security deed would have authority to foreclose, just as it did prior to the amendment. Secured creditor must have a fixed definition in order for the amendment to have meaning, and this Court is bound to apply the presumption that the legislature did not intend to "enact meaningless language." Osborne Bonding & Surety Co. v. Georgia, 224 Ga. App. 590, 481 S.E.2d 578, 579 (Ga. 1997).

Plaintiff has alleged facts making it plausible that Fannie Mae was in fact the secured creditor at the time of the foreclosure and has alleged that no assignment to Fannie Mae was filed prior to the time of sale as required by O.C.G.A. § 44-14-162(b). Therefore, based on the allegations in the amended complaint, BAC evaded the most substantive requirements of Georgia's foreclosure statute in that (1) it was not the secured creditor entitled to foreclose despite providing a notice letter affirmatively representing it was the creditor; and (2) it failed to file the assignment of the security deed to the secured creditor in the county deed records prior to the foreclosure. See O.C.G.A. § 162(b); Weems v. Coker, 70 Ga. 746, 749 (Ga. 1883); Cummings v. Anderson, 173 B.R. 959, 963 (Bankr. N.D. Ga. 1994).  [17] 3 The Court accordingly

DENIES the motion to dismiss Plaintiff's claim for wrongful foreclosure based on failure to comply with Georgia foreclosure law.

For the reasons set forth in <u>Stubbs</u> the decision the Motion to Dismiss the Plaintiffs' wrongful foreclosure claims based upon the failure to send the Plaintiffs a notice of foreclosure that complied with O.C.G.A. 44-14-162.2 must be denied.

In further support of the denial of the Motion to Dismiss under consideration herein the Plaintiffs note that the Georgia Supreme Court has already ruled in a case involving a statue that has very similar notice requirement as the one contained in OCGA 44-1-162.2 that when the Georgia legislature passes a law that requires that a notice of some intended action be sent before the action can commence, and where the law states that the notice is to be sent by a certain party, then Georgia Courts are to require strictly compliance to the "sent by" provision of the statute. The case is <u>Krapf v. Wiles</u>, 252 Ga. 452; 314 S.E. 2d 656 (Ga. 1984).

In <u>Krapf</u> the Georgia Supreme Court was called upon to interpret a particular provision in a Georgia statute that requires that a notice be sent by the note holder who has initiated foreclosure proceedings to the debtor before a demand for reimbursement of attorney's fees can be enforced. The issue before the Court in <u>Krapf</u> was almost identical to one of the issues before the Court in the case at bar. Presently, Plaintiffs allege that the notice of foreclosure letters

that were sent to them do not meet the requirements of O.C.G.A. 44-14-162.2 because they were sent by someone other than the "secured creditor." In Krapf the issue was whether an attorneys fee notice that was sent to the debtor complied with the requirements of the attorney's fee statute when it was sent by someone other than the note holder. The Supreme Court's decision in Krapf is controlling as to how the notice provisions of the Georgia Foreclosure Statute should be interpreted.

In Krapf the Georgia Supreme Court held that an entity seeking the recovery of attorney's fees must strictly follow the notice requirements contained in O.C.G.A. 13-1-11(a)(3). The Plaintiff in Krapf sought the recovery of attorney's fees from a debtor which Krapf had incurred in association with an attempted foreclosure on their property which secured the debt. Plaintiff Krapf sent an April 5 letter which purported to notify the debtor of Krapf's intent to enforce the attorney's fee provision of the Note. The sole issue before the Georgia Supreme Court was whether or not the April 5th letter complied with the notice requirements of O.C.G.A. 13-1-11-(a)(3). That statute provides:

> "the holder of the note, or other evidence of indebtedness, or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser or parties sought to be held on such obligation that the provisions relative to the payment of attorney's fees in addition to the principle and interest shall be enforced and that such maker, endorser or party sought to be held on said obligation has ten days from receipt of such notice to pay the principle and interest without the attorney's fees."

The debtor in the Krapf case argued that the April 5 letter did not comply with the requirements of O.C.G.A. 13-1-11-(a)(3) because it was not sent to the debtor by the holder of the Note as required by O.C.G.A. 13-1-11(a)(3).  The Georgia Supreme Court agreed with the debtor and held that a party seeking to enforce the attorney's fees provisions contained in a promissory note or security deed must strictly comply with the prerequisites of Georgia law before any such effort to collect attorney's fees would be allowed.  Specifically, the Georgia Supreme Court in Krapf stated:

> "the sole issue is whether the April 5 letter, which purports to notify Wiles of Krapf's intent to enforce the attorney's fee provision of the Note, complied with the requirements of O.C.G.A. Section 13-1-11(a)(3).  The statute provides: 'the holder of the note, or other evidence of indebtedness, or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser or parties sought to be held on such obligation that the provisions relative to the payment of attorney's fees in addition to the principle and interest shall be enforced and that such maker, endorser or party sought to be held on said obligation has ten days from receipt of  such notice to pay the principle and interest without the attorney's fees.'

> "On appeal of Krapf, *cite*, General Electric Corp, v. Brooks, 242 Ga. 109 (249 S.E. 2d 596)(1978) in support of his position that the April 5[th] letter to Wiles substantially complied with the above quoted statute.  We disagree.  The law requires that notice of intent to enforce an attorney fee provision be sent by the **holder** of the Note.  O.C.G.A. 11-1-201(20) defines 'holder' as a "person who is in possession of a document of title or other instrument or an investment security drawn, issues or endorsed to him or to his order or to borrower and to.'  On April 5, the date of the letter, the bank and not Krapf was in possession of the Note and Security deed.  Therefore the letter relied on by Krapf was not notice as required by O.C.G.A. 13-1-11.  In our view, the statute's requirement that the notice be sent by the 'holder' is a matter of substance to which

>the doctrine of substantial compliance does not apply. Statutory notice for the purpose of fixing liability for attorney's fees should disclose who is the holder of the Note and who it is that intends to bring suit and to whom the payment is to be made; and if notice is so worded as to mislead or as to be likely to mislead the MERS in material respects as to these features, it is inadequate." Gelders v. Kennedy, 9 Ga. App. 389, 390 (71 S.E. 503)(1911).

(Kraff @ p. 657-658).

The requirement in O.C.G.A. 14-44-162.2 that the secured creditor send the debtor a notice of the impending foreclosure sale should be afforded the same treatment as was applied by the Georgia Supreme Court in Krapf. Because the attorney's fees recovery statute directs that notice be sent to the debtor by a certain party using language that is almost identical as the language used in O.C.G.A. 14-44-162.2, the manner in which the Georgia Supreme Court decided the Krapf case is critical and should guide this Court's interpretation of O.C.G.A. 44-14-162.2.

    **C.**    **The Defendants Lacked the Authority to Exercise the Power of Sale**

JP Morgan Chase Bank, NA, in arguing that it acquired the power of sale of the subject property relies upon a purported assignment from Excel to Chase Manhattan and its status a second generation successor by merger of Chase Manhattan. However, as alleged in the complaint and confirmed by review of the assignment upon which JP Morgan Chase Bank relies, the argument that it

acquired the authority to exercise the power of sale of the Plaintiffs' property by virtue of the assignment is misplaced.  The "assignment" of the security deed (attached as Exhibit B to Defendants' Motion to Dismiss) is defective and actually conveys nothing from Excel to Chase Manhattan. It utterly fails to identify the security deed that it was attempting to assign from Excel to Chase Manhattan.   All it days is that is assigning "that certain Deed to Secure Debt executed by Chae Yie You and Chur K. Back to Excel Home Loan Inc…".  It does not identify the security  deed anymore specifically.  It does not identify the security deed by book or page where it is recorded or even the date upon which it is executed.  It does not identify the property that is the subject of the deed.  It fails to stand as notice as to just what is being assigned and thus cannot be relied upon as a valid conveyance of  the power of sale to Chase Manhattan/JP Morgan Chase Bank

  WHEREFORE, for all of the foregoing reasons, the Motion to Dismiss filed by Defendants must be denied.

   Respectfully submitted this 1 day of March, 2012.

         ____/s/ David Ates_____
          David C. Ates
          State Bar No. 026281

DAVID ATES, P.C.
6400 Powers Ferry Road, Suite 112
Atlanta, Georgia 30339
(404)969-4104

Case 1:12-cv-00202-JEC   Document 7   Filed 03/01/12   Page 19 of 20

I have this day served defendants counsel with this Response in Opposition to their Motion to Dismiss via filing with the e-filings system.  March 1, 2012


_____/s/ David Ates_____

David Ates