# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

CHAE YI YOU and
CHUR K. BACK,

       Plaintiffs,

v.

JP MORGAN CHASE
BANK, N.A., and FEDERAL
NATIONAL MORTGAGE
ASSOCIATION,

       Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION FILE NO.
1:12-CV-202-JEC-AJB

## UNITED STATES MAGISTRATE JUDGE'S
## ORDER AND FINAL REPORT AND RECOMMENDATION

Currently before the Court is Defendants' Motion to Dismiss Plaintiffs'

Complaint, [Doc. 2], and Plaintiffs' Motion for Leave to File Response in Opposition

to Defendants' Motion to Dismiss Out of Time, [Doc. 8]. For the reasons that follow,

the undersigned **GRANTS** Plaintiffs' motion for leave to file their out-of-time response

to Defendants' motion to dismiss, [Doc. 8], and **RECOMMENDS** to the District Judge

that she **GRANT** Defendants' motion to dismiss the complaint, [Doc. 2].

## I.   Background[1]

On April 29, 2003, Plaintiffs Chae Yi You and Chur K. Back obtained a residential mortgage loan through Excel Home Loans ("Excel") for purchase of the property located at 2840 Crescent Walk Lane, Suwanee, Georgia 30024 ("the Property"). [Doc. 1-1 ¶¶ 2-3, 8]. As part of the loan transaction, Plaintiffs executed a promissory note and a security deed. [*Id.*]. The security deed named Excel as the grantee,[2] [*id.* ¶ 9], and the promissory note was executed in favor of Excel, [*id.* ¶ 10]. Sometime thereafter, the promissory note was sold or transferred to an "unidentified" entity. [*Id.*].

By letter dated October 1, 2010, a law firm appearing to represent Defendant Federal National Mortgage Association ("Fannie Mae") notified Plaintiffs that they

---

[1]     As it must when deciding a motion to dismiss, the Court accepts as true the well-pleaded facts set forth in Plaintiffs' complaint, [Doc. 1-1], and construes those facts in the light most favorable to Plaintiffs. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."). The Court, however, is not required to accept Plaintiffs' legal conclusions. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Nor will the Court "accept as true a legal conclusion couched as a factual allegation." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2]     The security deed was recorded at Deed Book 32844, page 0068, in the Superior Court of Gwinnett County, Georgia, on June 2, 2003. [Doc. 1-4 at 1].

2

might be eligible for a loan workout with Fannie Mae.[3]  [*Id.* ¶ 11].  In June 2011,

Plaintiffs received a series of letters wherein they were informed that the Property was

to be sold at a foreclosure auction on the first Tuesday in August 2011.  [*Id.* ¶ 12].  The

letters, which purported to be the notice-of-foreclosure letter mandated under O.C.G.A.

§ 44-14-162.2, identified Defendant JP Morgan Chase Bank, N.A. ("Chase")  as the

secured creditor.  [*Id.*].

On or about August 2, 2011, Chase conducted a non-judicial foreclosure sale of

the Property on the steps of the Gwinnett County courthouse.  [*Id.* ¶¶ 4, 13].  Chase, as

the highest bidder, executed a Deed Under Power, wherein it stated that it was the

highest bidder at the foreclosure auction of the Property, was acting as attorney-in-fact

on Plaintiffs' behalf, and conveyed all of Plaintiffs' interests in the Property to itself.

---

[3]     Plaintiffs mention that they filed for bankruptcy, apparently to explain (without expressly admitting that they defaulted on their loan) why Fannie Mae determined that they might be eligible for a loan workout. [*See id.* ¶ 11].  A search of the Bankruptcy Court's records did not reveal any bankruptcy filings for Plaintiff Back. However, Bankruptcy Court records show that Plaintiff You's first bankruptcy case was filed on August 3, 2010, and dismissed on November 5, 2010, based on the Trustee's objections to confirmation, *see In re You*, Case No. 10-82627-mhm (Bankr. N.D. Ga.), and a second bankruptcy case was filed on January 3, 2011, and dismissed on April 19, 2011, for Plaintiff You's unreasonable and prejudicial delay, *see In re You*, Case No. 11-50298-mhm (Bankr. N.D. Ga.).  Because neither bankruptcy case was pending at the time of the foreclosure, and the parties do not contend that the filings affected the validity of the foreclosure process, the undersigned will presume that the bankruptcy filings are immaterial to the motion to dismiss.

AO 72A
(Rev.8/8
2)

[*Id.* ¶ 13].  The same day, Chase executed a quitclaim deed transferring its rights, title, and interests in the Property to Fannie Mae.  [*Id.* ¶ 22].  In September 2011, Fannie Mae initiated dispossessory proceedings in the Magistrate Court of Gwinnett County, Georgia, seeking to evict Plaintiffs from the Property and to obtain for itself the right to possession of the Property.  [*Id.* ¶ 24].  On November 3, 2011, the Magistrate Court of Gwinnett County issued a writ of possession to Fannie Mae.  [*Id.* ¶ 25].

On November 8, 2011, Plaintiffs, who are represented by counsel, filed suit in the Superior Court of Gwinnett County, Georgia.[4]  [*Id.* at 1].  They allege claims for wrongful foreclosure and wrongful eviction, and they seek equitable relief, damages, punitive damages, and costs and attorneys' fees.  [*Id.* at 1, 15-19].  They ground their claims in allegations of faulty assignment of the security deed, separation of the security deed from the note, and faulty notice of foreclosure.  [*Id.*, *passim*].

On January 20, 2012, Defendants removed the action to this Court on the basis of diversity-of-citizenship jurisdiction.  [Doc. 1 at 1-5].

On January 27, Defendants filed the motion to dismiss that is presently before the Court.  [Doc. 2].  Thereafter, the Court approved a proposed consent order

---

[4]     Gwinnett County assigned the matter Civil Action File No. 11A-11798-7. [Doc. 1-1 at 1].

extending the time for Plaintiffs to respond to February 23. [*See* Minute Order, Feb. 14, 2012]. Although they did not seek a further extension of time, Plaintiffs did not file a response to the motion to dismiss until March 1. [Doc. 7]. The next day, they filed the pending motion for leave to file the response out-of-time. [Doc. 8]. On March 19, Defendants filed a reply brief supporting their motion to dismiss and opposing Plaintiffs' motion to file their response out-of-time. [Doc. 10]. The briefing period having elapsed, the undersigned now considers the motions.

## II.    *Motion to File Out-of-Time Response*

In the motion to file the response out-of-time, Plaintiffs' counsel explains that the late filing was a result of his own oversight. [Doc. 8 ¶ 3]. He asks the Court to exercise its discretion and excuse the six-day delay so that the case may be decided on its merits. [*Id.* ¶¶ 4-5]. He also points out that Defendants will not suffer prejudice if the Court grants the motion for extension of time. [*Id.* ¶ 5]. Defendants, in response, simply request that the Court strike Plaintiffs' response for failure to adhere to a court-mandated pleading deadline. [Doc. 10 at 3].

Despite the undeniable lateness of Plaintiffs' response brief, the Court will exercise its discretion and accept the filing in the interest of allowing Plaintiffs every opportunity to present their case in response to Defendants' dispositive motion. *See*

5

*Magluta v. Samples*, 162 F.3d 662, 664-65 (11th Cir. 1998) (per curiam) (recognizing that it is within the discretion of the district court to dismiss a case pursuant to LR 7.1(b), NDGa, when a represented party fails to respond to a motion to dismiss); *Edwards v. Shalala*, 846 F. Supp. 997, 998 n.2 (N.D. Ga. 1994) (Freeman, J.) ("[T]he court, in its discretion, may waive a Local Rule."); *see also In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (recognizing that in the Eleventh Circuit, "there is a strong policy of determining cases on their merits"). The motion for leave to file an out-of-time response to Defendants' motion to dismiss is therefore **GRANTED**. [Doc. 8].

### III.   *Legal Standard*

A court will grant a Rule 12(b)(6) motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8 of the Federal Rules of Civil Procedure, a pleading states a claim when it contains, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). To determine whether a complaint fails to state a claim, the Court must apply the standard announced by the Supreme Court in *Twombly*, recently described as follows:

AO 72A
(Rev.8/8
2)

[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Iqbal*, 556 U.S. at 678-79 (alterations, citations, and internal quotation marks omitted).

The Court notes that the parties' arguments depend heavily on documents attached to the complaint and to the motion to dismiss. Generally, the Court must convert a motion to dismiss to a motion for summary judgment if it considers materials

7

outside of a complaint. *See* Fed. R. Civ. P. 12(d); *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). However, the Court need not make this conversion when considering a document attached to the complaint or to a motion to dismiss if "the attached document is (1) central to the plaintiff's claim and (2) undisputed. *Day*, 400 F.3d at 1276; *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 923 n.1 (11th Cir. 1997) ("Documents attached to and incorporated into the complaint were properly before the district court on a motion to dismiss."); *Clark v. Bibb Cnty. Bd. of Educ.*, 174 F. Supp. 2d 1369, 1370 (M.D. Ga. 2001) ("A court evaluating a motion to dismiss for failure to state a claim upon which relief can be granted . . . may . . . consider any attachments to the complaint, matters of public record, orders, and items appearing in the record.").[5] A document is "undisputed" when its authenticity is unchallenged. *Day*, 400 F.3d at 1276.

_____

[5]     Plaintiffs assert that the Court's consideration of a motion to dismiss is restricted to the allegations in the complaint. [Doc. 7 at 7 (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003), and *Ramos v. Goodfellas Brooklyn's Finest Pizzeria*, LLC., No. 08-61240-CIV, 2008 WL 4613059 (S.D. Fla. Oct. 15, 2008)]. Neither of the cases Plaintiffs cite concern undisputed documents central to the complaint, however. In *Morrison*, the court determined that the district court should not have weighed deposition testimony without converting the motion to dismiss to a motion for summary judgment. 323 F.3d at 924. In *Ramos*, the district court declined to consider an affidavit on a motion to dismiss. 2008 WL 4613059 at *1. Thus, these cases do not overcome the authority that allows the Court to consider the loan and merger documents.

AO 72A
(Rev.8/8
2)

Here, the loan and merger documents attached to the complaint and motion to dismiss are central to Plaintiffs' claims, and their authenticity is undisputed. Therefore, the undersigned considers the documents in conjunction with the motion to dismiss and does not convert the motion to a motion for summary judgment.

## IV. *Discussion*

In their motion to dismiss, Defendants point out an issue that is glossed over in Plaintiffs' complaint: the fact that Plaintiffs defaulted on their loan. [Doc. 2-1 at 3]. Plaintiffs, in their reply, do not contest the assertion. Although Defendants neglect to brief this most basic issue, the Court, in the interest of conserving judicial resources, will address it *sua sponte*.[6]

" 'Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury [he] sustained, and damages.' " *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 448, 662 S.E.2d 141, 147 (2008) (quoting *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004)). A foreclosing party has the duty

---

[6] Should Plaintiffs believe that they have grounds to object, they will have the opportunity to do so within the fourteen-day period they will have to object to this Report and Recommendation.

AO 72A
(Rev.8/8
2)

to exercise fairly the power of sale in a deed to secure a debt under O.C.G.A. § 23-2-114. *See Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285, 285, 443 S.E.2d 837, 838 (1994). Thus, there is a breach of duty if the foreclosing party violates provisions of the loan instruments or Georgia law. *See Heritage Creek*, 268 Ga. App. at 374, 601 S.E.2d at 846; *McCarter v. Bankers Trust Co.*, 247 Ga. App. 129, 132, 543 S.E.2d 755, 758 (2000) (noting that a violation of the Georgia foreclosure statute is necessary to state a wrongful foreclosure). Failure to make the proper loan payments defeats any wrongful-foreclosure claim, however. *See Warque v. Taylor, Bean, & Whitaker Mortg. Corp.*, Civil Action No. 1:09-CV-1906-ODE-CCH, 2010 U.S. Dist. LEXIS 142129, at *14-15 (N.D. Ga. July 30, 2010) (Hagy, M.J.) (finding causation not established where plaintiff had failed to make payments on loan (citing *Heritage Creek*, 268 Ga. App. at 370-71, 601 S.E.2d at 845 (finding that plaintiff's injury was "solely attributable to its own acts or omissions both before and after the foreclosure" because plaintiff defaulted on the loan payments, failed to cure the default, and did not bid on the property at the foreclosure sale)), *adopted by* 2010 U.S. Dist. LEXIS 1421119 (N.D. Ga. Aug. 18, 2010) (Evans, J.); *see also Taylor v. Wachovia Mortg. Corp.*, No. 1:07-cv-2671-TWT, 2009 WL 249353, at *5 n.6 (N.D. Ga. Jan. 30, 2009) (Thrash, J., adopting Vineyard,

10

AO 72A
(Rev.8/8
2)

M.J.) ("Plaintiff has not provided any evidence showing that he tendered the full amount of the loan or any portion thereof. Thus, under Georgia law, plaintiff has no standing to bring an action to enjoin the foreclosure sale.").

In the case at hand, even if the assignment of the security deed was deficient, the separation of the security deed from the note had some legal effect, or the statutory foreclosure notice was faulty, [*see* Doc. 1-1], that does not mean that Plaintiffs are entitled to possession of the property. This is because, lacking an allegation in the complaint that Plaintiffs were current on their loan, it appears that any breach of duty Defendants may have committed were not the cause of Plaintiffs' injury–rather, Plaintiffs' failure to pay was the cause. *See Warque*, 2010 U.S. Dist. LEXIS 142129 at *14-15. As such, Plaintiffs have failed to state a plausible claim for wrongful foreclosure.

Likewise, because Plaintiffs' wrongful eviction claim is predicated on their wrongful foreclosure claim, Plaintiffs have also failed to state a claim for wrongful eviction. [*See* Doc. 1-1 at 17].

For these reasons, the undersigned **RECOMMENDS** that Plaintiffs' complaint be **DISMISSED**.

AO 72A
(Rev.8/8
2)

### A.    Wrongful Foreclosure

In the event that the District Judge declines to adopt the above recommendation, the undersigned now turns to the parties' arguments.

### 1.    Arguments

In the complaint, Plaintiffs state that the foreclosure was wrongful because "there was never a valid assignment of the security deed from Excel to any other entity," and therefore Chase had no interest in the security deed at the time of foreclosure. [Doc. 1-1 ¶ 35]. They further contend that the "notice of the initiation of proceedings to exercise the power of sale was not sent by the secured creditor, as demanded by O.C.G.A. § 44-14-162.2(a)," and consequently, the non-judicial foreclosure sale conducted by Chase was "invalid as a matter of law." [*Id.* ¶ 34].

In the motion to dismiss, Defendants first argue that Plaintiffs cannot establish a viable claim for wrongful foreclosure because Plaintiffs cannot establish that Defendants violated any provisions of the loan instruments or Georgia law. [Doc. 2-1 at  8]. They contend that the publicly available real property records and merger documents attached to their motion to dismiss "clearly show the chain of title whereby Chase acquired the power of sale from Excel, the originator of the Loan." [*Id.* at 8-10]. Specifically, they state that on or about April 23, 2003, Plaintiffs entered

12

into the loan agreement with Excel; on April 29, 2003, Excel assigned its interest in the loan to Chase Manhattan Mortgage Corporation; on January 1, 2005, Chase Manhattan Mortgage Corporation merged with and into Chase Home Finance LLC, whereupon Chase Home Finance LLC assumed by agreement all rights in the security deed previously held by Chase Manhattan Mortgage Corporation; and on May 1, 2011, Chase Home Finance LLC merged into Chase, whereupon Chase acquired the security deed and all rights contained therein. [*Id*. at 9-10]. They further aver that Plaintiffs' own pleadings show that the notice of foreclosure identifying Chase as the secured creditor was proper under O.C.G.A. § 44-14-162. [*Id*. at 8-11].

In response, Plaintiffs make four arguments. First, they point out that the document purportedly assigning the security deed from Excel to Chase Manhattan Mortgage Corporation identifies the original security deed only with respect to Plaintiffs' names and the loan number and does not identify the original security deed by deed book or page number, by the date it was executed, or by the property address. [Doc. 7 at 3, 18]. Plaintiffs argue that the document therefore "fails to stand as notice as to just what is being assigned and thus cannot be relied upon as a valid conveyance of the power of sale." [*Id*. at 18]. Second, they argue that Chase did not have the right to foreclose on the loan because it never received assignment of the security deed and

AO 72A
(Rev.8/8
2)

it was not a successor by merger to Chase Manhattan Mortgage Corporation or Chase Home Finance LLC. [*Id*. at 3]. Third, Plaintiffs allege that Chase was not the owner of the promissory note at the time of foreclosure, and therefore it was not the secured creditor. [*Id*. at 4-6]. Finally, Plaintiffs contend that because the letters informing them of the pending foreclosure identified Chase as the secured creditor and were sent by an entity other than the secured creditor, the notice of foreclosure was improper pursuant to O.C.G.A. § 44-14-162.2. [*Id*. at 4-5, 9-17].

In reply to Plaintiffs' deficient-assignment argument, Defendants point out that Plaintiffs proffer no legal authority for their position and that, in fact, "there is no prescribed form for security deeds in Georgia." [Doc. 10 at 4-5 (referencing O.C.G.A. § 44-5-33 ("If the deed is sufficient in itself to make known the transaction between the parties, no want of form will invalidate it."))]. They contend that identification of the security deed by reference to Plaintiffs' names and their Excel loan number is adequate to show what security deed was assigned. [Doc. 10 at 5]. In reply to Plaintiffs' notice arguments, Defendants contend that even if Fannie Mae sent the foreclosure notices on Chase's behalf, Plaintiffs do not state a claim for wrongful foreclosure because a loan servicer may send foreclosure notice on behalf of a secured creditor. [Doc. 10 at 3-4].

14

AO 72A
(Rev.8/8
2)

### 2. Analysis

#### a. Security-Deed Assignment

The undersigned first considers Plaintiffs' argument that the assignment from Excel to Chase Mortgage was insufficient to show what security deed was assigned and therefore "cannot be relied upon as a valid conveyance of the power of sale." [Doc. 7 at 18]. As Defendants aptly note, Plaintiffs provide no authority in support of the argument. [*See id.*, *passim*]. Defendants, in turn, simply point to the Georgia statute stating that a deed will be sufficient so long as it makes known the transaction between the parties. [Doc. 10 at 4-5 (referencing O.C.G.A. § 44-5-33)].

Under Georgia law, the sufficiency of a property description in a deed is a question of law to be decided by the Court. *Adams v. City of Ila*, 221 Ga. App. 372, 373, 471 S.E.2d 310, 312 (1996). For a deed to be valid, it must identify the land with reasonable definiteness or contain a key to making the identification by use of extrinsic evidence. *Hardison v. McCreary*, 304 F.2d 699, 701 (5th Cir. 1962)[7] (finding a deed sufficiently certain when it set out the county, land district and land lot numbers in

---

[7]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

which the land was situated, the names of the adjoining land owners, and that it was the property of the appellant). "The test as to the sufficiency of the description of property contained in a deed is whether it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable." *Swan King, Inc. v. Kang*, 243 Ga. App. 684, 688, 534 S.E.2d 145, 148 (2000) (noting that a property description need not be "perfect," but "must furnish the key to the identification of the land intended to be conveyed by the grantor"). "Even a vague description will suffice 'if by competent parol evidence its precise location is capable of ascertainment and its identity can thus be established.' " *Id.* (quoting *Crawford v. Verner*, 122 Ga. 814, 816, 50 S.E. 958 (1905)).

Here, the Court finds that the assignment was sufficiently detailed to show that the security deed that was assigned from Excel to Chase Manhattan Mortgage Corporation was Plaintiffs' security deed on the Property. Although the assignment did not set forth the property address or the deed book or pages where the original security deed was recorded, it did correctly state that Plaintiffs had executed the original deed to secure debt to Excel; the original deed to secure debt had been recorded in the office of the Clerk of the Superior Court of Gwinnett County, Georgia; and the deed to secure

16

debt was associated with loan number 1686223862. [*Compare* Doc. 2-3 at 2 *with* Doc. 1-4 at 1]. The assignment also appeared in the Gwinnett County deed book on the page immediately following Plaintiffs' original security deed and associated loan documents and was filed on the same date and at the same time. [*Compare* Doc. 2-3 at 2 *with* Doc. 1-4 at 1-20]. This information is sufficient to show that it was Plaintiffs' original security deed that Excel assigned to Chase Manhattan Mortgage Corporation.

The assignment was also adequately specific regarding the rights it conveyed. The document specified, "The Assignor herein specifically transfers, sells, conveys and assigns to the above assignee, its successors, representatives and assigns, the aforesaid Security Deed, the property described therein, the indebtedness secured thereby together with all the power, options, privileges and immunities therein contained." [Doc. 2-3 at 2]. Among the privileges contained in the security deed was the option to, upon Plaintiffs' default, invoke power of sale and foreclose upon the Property. [Doc. 1-4 at 3].

For these reasons, the undersigned finds as a matter of law that the document entitled Corporation Assignment, [Doc. 2-3 at 2], contained a description that was sufficient to show that Excel intended to assign all of its rights in the security deed on Plaintiffs' property to Chase Manhattan Mortgage Corporation. Consequently, to the

17

extent that Plaintiffs' claims rest on their argument that the deed "fails to stand as notice as to just what is being assigned," the undersigned **RECOMMENDS** that they be **DISMISSED**.

### b.       *Chase's Interest in Security Deed*

The undersigned next turns to Plaintiffs' contention that Chase did not have the right to foreclose on their property because Chase never received assignment of the security deed from Excel and was not a successor by merger to Chase Manhattan Mortgage Corporation or Chase Home Finance LLC.  [*See* Doc. 7 at 3, 5-6]. Defendants do not argue that Chase directly received assignment of the security deed from Excel; instead they assert that after Excel assigned the security deed to Chase Manhattan Mortgage Corporation, Chase acquired the assigned security deed as second-generation successor to Chase Manhattan Mortgage Corporation. [Doc. 2 at 8-10].  Plaintiffs do not explain the basis for their contention that Chase is not a successor by merger to Chase Manhattan Mortgage Corporation.  [*See* Doc. 7, *passim*].

The undersigned has reviewed the real property records and merger documents proffered by the parties and finds that they show the chain of title whereby Chase acquired the power of sale from Excel.  On April 29, 2003, Plaintiffs entered into the

18

AO 72A
(Rev.8/8
2)

loan agreement with Excel. [*See* Doc. 1-4 at 1-20; Doc. 2-2 at 2-21]. In connection

with the loan, Plaintiffs executed the note and deed secured by the Property in favor of

Excel. [*See* Doc. 1-4 at 1-20; Doc. 2-2 at 2-21]. Also on April 29, 2003, Excel

assigned its interest in the security deed to Chase Manhattan Mortgage Corporation.[8]

[*See* Doc. 2-3 at 2]. On June 2, 2003, at 8:00 a.m., the original security deed and loan

documents and the assignment were filed with the Superior Court of Gwinnett County

in Deed Book 32844 at pages 0068 through 0088. [*See* Doc. 1-4 at 1-20; Doc. 2-2 at 2-

21; Doc. 2-3 at 2]. On January 1, 2005, Chase Manhattan Mortgage Corporation

merged with and into Chase Home Finance LLC, and Chase Manhattan Mortgage

Corporation ceased to exist as a separate entity. [*See* Doc. 2-4 at 2-3].[9] On

May 1, 2011, Chase Home Finance LLC merged into JP Morgan Chase Bank, National

Association (herein referred to as "Chase"), and Chase Home Finance LLC ceased to

exist as a separate entity. [*See* Doc. 2-5 at 2-4].[10]

---

[8]    *See also supra* Part 4.A.2.a.

[9]    The certificate of merger was filed with the State of Delaware Secretary
of State on December 14, 2004. [Doc. 2-4 at 3].

[10]    The certificate of merger was filed with the State of Delaware Secretary
of State on April 27, 2011. [Doc. 2-5 at 3].

AO 72A
(Rev.8/8
2)

Because the Property records and merger documents clearly show that Excel assigned its interest in Plaintiffs' security deed to Chase Manhattan Mortgage Corporation and that Chase was the second-generation successor-by-merger to Chase Manhattan Mortgage Corporation, and because Plaintiffs have not challenged the authenticity of the public documents proving such, the undersigned finds that Defendants have established Chase's interest in the security deed. Thus, to the extent that Plaintiffs' claims rest on their argument that Chase never received assignment of the security deed, the undersigned **RECOMMENDS** that they be **DISMISSED**.

### c. *Promissory Note*

The undersigned next considers Plaintiffs' argument that because Chase was not the owner of the promissory note at the time of foreclosure, it was not the secured creditor, and therefore it did not have the right to foreclose on the Property. [Doc. 7 at 4-6, 9]. In response, Defendants argue that Excel assigned all of its interest in the loan to Chase Manhattan Mortgage Corporation when it endorsed the Corporation Assignment. [Doc. 2-1 at 9 (citing Doc. 2-3 at 2)]. A review of the Corporation Assignment reveals, however, that Excel assigned Chase Manhattan Mortgage Corporation "as Assignee, its successor and assigns, all of the Assignor's right, title and interest in and to and under that certain *Deed to Secure Debt*." [Doc. 2-3 at 2 (emphasis

20

added)].  In fact, the Corporation Assignment makes no mention of the ownership of the promissory note.  [*See id.*].

Be that as it may, under Georgia law, the separation of the note and security deed does not preclude foreclosure proceedings.  *In re Corley*, 447 B.R. 375, 383 (Bankr. S.D. Ga. Feb. 7, 2011) (citing O.C.G.A. § 44-14-64(b) for the proposition that "upon a transfer of a deed to secure debt, the accompanying indebtedness is also transferred"); *Weston v. Towson*, No. 5:04-CV-416, 2006 WL 2246206, at *6 (M.D. Ga. Aug. 4, 2006) (holding that even when an action under the note is barred, remedies under the security deed remain "so long as the debt evidenced by the note has not been satisfied . . . ."); *cf. Nicholson v. OneWest Bank*, 1:10-CV-0795-JEC/AJB, 2010 WL 2732325, at *4 (N.D. Ga. Apr. 20, 2010) ("[T]he nominee of the lender has the ability to foreclose on a debtor's property even if such nominee does not have beneficial interest in the note secured by the mortgage."), *adopted at* 2010 WL 2732329 (N.D. Ga. June 7, 2010).  Moreover, in this particular case, the language in the security deed expressly defined the deed grantee as the "Lender," and specified that the Lender had the right to invoke power of sale upon default for failure to pay the monthly amounts due under the note.  [Doc. 1-4 at 2-3].

21

As discussed above, the undisputed Property records and merger documents show Chase's interest in the security deed, [*see supra* Part IV.A.2.b.], and the complaint contains no allegation that Plaintiffs were current on the note, [Doc. 1-1, *passim*]. Therefore, Plaintiffs have not alleged facts sufficient to show that under the terms of the security deed, Wells Fargo did not have the right to pursue non-judicial foreclosure.[11]

Consequently, to the extent that Plaintiffs' claims rest on their argument that Chase did not receive assignment of the promissory note, the undersigned **RECOMMENDS** that they be **DISMISSED**.

---

[11] The undersigned recognizes that this determination conflicts with other opinions of this Court in which the District Judge held that Georgia law requires an entity to possess both the security deed and promissory note in order to foreclose. *See, e.g., Stubbs v. Bank of Am.*, --- F. Supp. 2d ---, 1:11-CV-1367, 2012 WL 516972, at *7 n.3 (N.D. Ga. Feb. 16, 2012); *Morgan v. Ocwen Loan Servicing, LLC*, 795 F. Supp 1370, 1376 (N.D. Ga. 2011) (Totenberg, J.). Because the security deed in this case expressly grants the lender/grantee the right to invoke power of sale upon default for failure to pay the monthly amounts due under the note, the undersigned finds that the general rule set forth in these cases is inapposite here. *See Gordon v. S. Cent. Farm Credit, ACA.*, 213 Ga. App. 816, 817, 446 S.E.2d 514, 515 (1994) ("Under Georgia law, '[i]t is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.' ") (citations and punctuation omitted in original); *Jackman v. Hasty*, Civil Action No. 1:10-cv-2485-RWS, 2011 WL 854878, at *3 (N.D. Ga. Mar. 8, 2011) (quoting *Gordon*).

AO 72A
(Rev.8/8
2)

### d. *Notice of Pending Foreclosure*

The Court next considers Plaintiffs' argument that they received faulty notice of foreclosure. Under O.C.G.A. § 44-14-162.2, the lender must give the debtor prior notice of the foreclosure action. The notice requirements are as follows:

> Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor. The notice required by this Code section shall be deemed given on the official postmark day or day on which it is received for delivery by a commercial delivery firm. Nothing in this subsection shall be construed to require a secured creditor to negotiate, amend, or modify the terms of a mortgage instrument.

O.C.G.A. § 44-14-162.2(a).

Plaintiffs contend that because the letters informing them of the pending foreclosure identified Chase as the secured creditor and were sent by an entity other than the secured creditor, the notice of foreclosure was improper pursuant to O.C.G.A. § 44-14-162.2. [Doc. 7 at 4-5, 9-17 (citing *Stubbs*, 2012 WL 516972 at *2-5 and *Krapf v. Wiles*, 252 Ga. 452, 314 S.E.2d 656 (1984))]. Defendants, in turn, contend

23

that Chase was the secured creditor and that even if Fannie Mae sent the foreclosure notices on Chase's behalf, Plaintiffs do not state a claim for wrongful foreclosure because a loan servicer may send foreclosure notice on behalf of a secured creditor. [Doc. 10 at 3-4 (citing *Alexis v. Mortg. Elec. Registration Sys., Inc.*, 1:11-cv-01967-RWS, 2012 WL 716161, at *4 (N.D. Ga. Mar. 2, 2012), and *LaCosta v. McCalla Raymer, LLC*, No. 1:10-CV-1171-RWS, 2011 WL 166902, at *3-4 (N.D. Ga. Jan. 18, 2011))].

The Court has already found that the undisputed Property records and merger documents show Chase's interest in the security deed. [*See supra* Part IV.A.2.b.]. Consequently, the letters' identification of Chase as the secured creditor, [Doc. 1-1 ¶ 12], was not faulty.

Moreover, a judge on this Court has held that a loan servicer or another authorized agent may send foreclosure notice on behalf of a secured creditor. *See, e.g., Alexis v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 716161 at *4 (" 'The goal of Section 162 is to give the debtor notice of the foreclosure sale. Whether that notice is provided by the secured creditor directly, or by its agent is of no consequence.' " (quoting *LaCosta*, 2011 WL 166902 at *3-4); *LaCosta*, 2011 WL 166902 at *3-4 (finding that "nothing in Section 162.2 [indicates] that a secured creditor may not

24

utilize an agent to serve notice on a debtor of the initiation of foreclosure proceedings); *see also Stubbs*, 2012 WL 516972 at *4 (recognizing *LaCosta*'s holding that a secured creditor may appoint an agent to provide notice of foreclosure on its behalf so long as the material elements of the notice, such as the identification of the secured creditor, are properly disclosed).[12]

For these reasons, the undersigned finds that Plaintiffs have not raised a plausible claim for wrongful foreclosure under O.C.G.A. § § 44-14-162.2. Thus, to the extent that Plaintiffs' claims rest on their argument that they received faulty notice of foreclosure, the undersigned **RECOMMENDS** that they be **DISMISSED**.

### B.     *Wrongful Eviction*

Plaintiffs allege that because the foreclosure was wrongful, their subsequent eviction from the Property was also wrongful. [Doc. 1-1 ¶ 38; Doc. 7 at 3, 6-7]. In their motion to dismiss, Defendants argue that because Plaintiffs' wrongful eviction claim is predicated on their faulty wrongful foreclosure claim, the wrongful eviction must claim must also fail. [Doc. 2-1 at 12]. Indeed, the undersigned has found that

---

[12]     The cases cited by Plaintiffs turn on the content of the notices rather than what entity sent them, and thus do not lead to a different result. *See Stubbs*, 2012 WL 516972 at *4 (considering whether the notice correctly identified the secured creditor); *Krapf*, 252 Ga. at 453, 314 S.E.2d at 657-58 (holding that notice identifying a note holder was insufficient to allow a later assignee to foreclose).

AO 72A
(Rev.8/8
2)

Plaintiffs have failed to state a plausible claim of wrongful foreclosure. Because the wrongful eviction claim relies entirely on the presumption that the foreclosure was wrongful, Plaintiffs' wrongful eviction claim necessarily fails. As a result, the undersigned **RECOMMENDS** to the District Judge that she **DISMISS** the wrongful eviction claim.

### C. Punitive Damages, Declaratory Judgment, and Attorneys' Fees

Because Plaintiffs have failed to raise a plausible claim for wrongful foreclosure or wrongful eviction, Plaintiffs' claims for punitive damages, declaratory judgment, and attorneys' fees also fail. The undersigned therefore **RECOMMENDS** that the District Judge **DISMISS** the claims.

## V. Conclusion

Plaintiffs' motion for leave to file an out-of-time response to Defendants' motion to dismiss is hereby **GRANTED**. [Doc. 8]. The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' motion to dismiss, [Doc. 2], and **DISMISS** the complaint.[13] [Doc. 2].

---

[13] In the interest of completeness, the undersigned notes that Defendants also contend that Plaintiffs' complaint should be dismissed for failure to effect service of process. [Doc. 2-1 at 4]. Plaintiffs have since filed an affidavit of service of the complaint as to Fannie Mae. [Doc. 11]. As to Chase, the 120-day period after removal within which Plaintiffs may effect service of process has not yet run. *See Ritts v.*

The Clerk is **DIRECTED** to terminate reference to the undersigned Magistrate Judge.

**IT IS SO ORDERED, RECOMMENDED AND DIRECTED**, this 23rd day of May, 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

---

*Dealers Alliance Credit Corp.* , 989 F. Supp. 1475, 1479 (N.D. Ga. 1997); *see also Wallace v. Microsoft Corp*., 596 F.3d 703, 706-07 (10th Cir. 2010) (holding that plaintiff had an additional 120 days after removal to perfect service). Thus, the motion to dismiss for failure to effect service of process is moot as to Fannie Mae and premature as to Chase. Consequently, should the District Judge decline to grant Defendants' motion to dismiss on the grounds discussed above, to the extent that Defendants' motion to dismiss relies on Plaintiffs' alleged failure to effect service of process, the undersigned **RECOMMENDS** that it be **DENIED AS MOOT** as to Fannie Mae and **DENIED WITHOUT PREJUDICE** with regard to Chase.

AO 72A
(Rev.8/8
2)